IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**SUSAN G. SANDOVAL**,

       Plaintiff,

  vs.                   No.   **CIV 01-1140 MCA/ACT (ACE)**

**JOHN E. POTTER**, Postmaster
General, United States Postal Service,

       Defendant.


## MEMORANDUM OPINION AND ORDER


    **THIS MATTER** comes before the Court on ***Defendant's Motion for Partial Summary Judgment*** [Doc. No. 42] filed on October 24, 2002.  Having considered the pleadings and exhibits of record, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion in part and denies the motion in part for the reasons set forth below.

## I.    BACKGROUND

    On October 1, 2001, Plaintiff Susan G. Sandoval filed this civil action against Defendant John E. Potter, in his capacity as Postmaster General of the United States Postal Service (USPS), alleging sexual harassment in the form of a hostile work environment, retaliation, and gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17.  On October 24, 2002, Defendant moved for partial summary

judgment on the retaliation and gender discrimination claims contained in Counts II and III of Plaintiff's *Complaint*.  [Doc. No. 42.]

In an *Order* dated June 9, 2003, this Court granted Defendant's *Motion to Amend Answer* to add a defense based on the doctrine of after-acquired evidence.  [Doc. No. 79.] In accordance with that ruling, the Court gave the parties an opportunity to file supplemental briefs regarding *Defendant's Motion for Partial Summary Judgment*, in order to further address the defense of after-acquired evidence.  [Doc. No. 79.]  This supplemental briefing was completed on July 28, 2003.  [Doc. No. 87.]  The undisputed facts and evidence of record relating to Defendant's motion can be summarized in the light most favorable to Plaintiff as follows.

On or about March 7, 2000, Plaintiff submitted an application for employment to the USPS in which she checked and initialed a box indicating that she answered "no" to the following question:

> Have you ever been convicted of a crime or are you now under charges for any offense against the Law?  You may omit:  (1) any charges that were dismissed or resulted in acquittal; (2) any conviction that has been set aside, vacated, annulled, expunged, or sealed; (3) any offense that was finally adjudicated in a juvenile court or juvenile delinquency proceeding; and (4) any charges that resulted only in a conviction of a non-criminal offense.  **All felony and misdemeanor convictions and all convictions in state and federal courts are criminal convictions and must be disclosed.  Disclosure of such convictions is required even if you did not spend any time in jail and/or were not required to pay a fine.**

Plaintiff also certified "that all of the statements made in this application are true, complete, and correct to the best of my knowledge and belief and are in good faith."  Below Plaintiff's

signature on the application form, there is a statement that: "A false or dishonest answer to any question in this application may be grounds for not employing you or for dismissing you after you begin work, and may be punishable by fine or imprisonment." (Ex. C. to Kesner Decl. 10-24-02; Kesner Decl. 10-24-02, ¶¶ 9-10.)

On May 19, 2000, Plaintiff signed a "Pre-Employment Background Suitability Screening Agreement" stating that:

> I understand that I am being employed by the US Postal Service prior to their receipt of my background suitability assessment.

> If the results of the assessment reveal that I have misrepresented myself or falsified any information on the Application for Employment, or other documents, I will be terminated without appeal rights.

(Ex. B to Kesner Decl. 10-24-02; Kesner Decl. 10-24-02, ¶ 8.) Plaintiff was then hired as a probationary employee on or about June 3, 2000, and assigned to part-time duty as a letter carrier at the Main Post Office in Santa Fe, New Mexico. Her probationary period was to continue for a period of ninety days thereafter. (Compl. ¶ 8; First Am. Answer ¶ 8; Sandoval Aff. 11-7-02, ¶ 2; Ex. D to Kesner Decl. 10-24-02; Kesner Decl. 10-24-02, ¶¶ 11, 12.)

Plaintiff's employment with the USPS was terminated on August 17, 2000. The termination was effected by her immediate supervisor, Ronald Dikes, with authorization and approval from the Postmaster for the Santa Fe Post Office, Ed Schierberl. (Kesner Decl. 10-24-02, ¶ 11, 12; Schierberl Dep. at 6-7; 40-41; Dikes Dep. at 38, 46, 139-42, Ex. 1.)

Prior to her termination, Plaintiff had complained of sexual harassment by a male co-worker, Adrian Baca. Specifically, Plaintiff talked to another USPS supervisor, Carlos

Pompa, about receiving requests for dates from Mr. Baca in or about July 2000. (Compl. ¶ 12; First Am. Answer ¶ 12.)  Mr. Dikes found out about Plaintiff's allegations of sexual harassment from Mr. Pompa while Plaintiff was still working for the USPS.  (Dikes Dep. at 86-88.)  Mr. Schierberl, however, was unaware that Plaintiff had made allegations of sexual harassment until after she no longer worked for the USPS.  (Schierberl Dep. at 24,  37.)

On or about August 15, 2000, the postal vehicle assigned to Plaintiff accidentally became stuck in a ditch while she was working as a letter carrier.  Plaintiff called another USPS employee, Roger Maestas, to request assistance in extricating her vehicle from the ditch that day, but she did not receive such assistance.  She eventually succeeded in extricating the vehicle from the ditch by herself.  (Sandoval Dep. at 66-68, 78-81; Ex. 4 to Delaney Dep.)

An off-duty postal employee, David Delaney, observed the accident and reported it to J.R. Trujillo, the manager of the USPS's Coronado Station.  Mr. Trujillo relayed Mr. Delaney's report to Mr. Schierberl.  Based on this report, Mr. Schierberl told Mr. Dikes "that an employee had viewed a roll-away accident and gave him the location where that was."  Mr. Schierberl instructed Mr. Dikes "to go out and investigate it and see whether or not the statement of the witness was corroborated or not."  (Schierberl Dep. at 51-52; Delaney Dep. at 35-36.)  Mr. Dikes claims that he proceeded to speak with Mr. Delaney, as well as Plaintiff, on August 16, 2000.  Mr. Dikes also visited the scene of the accident on that date. (Dikes Dep. at 33-36, 46-48.)

According a written statement signed by Mr. Delaney on August 22, 2000, he was driving down Galisteo Street on Tuesday, August 15, at about 1:30 to 2:00 when he looked beside his car and saw a "mail Jeep" moving beside and behind his car with no driver.  Mr. Delaney then observed the Jeep drive off to the right of the roadway and run into a ditch with saplings that cushioned the impact of the Jeep.  (Ex. 4 to Delaney Dep.)  In his deposition testimony, Mr. Delaney also noted that he had observed a woman, not in uniform, delivering mail on foot in the vicinity of the Jeep around the time that it ran into the ditch.  (Delaney Dep. at 33-34.)

While Mr. Dikes claims that Mr. Delaney reported all of the above information to him on August 16, 2000, Mr. Delaney denies or does not recall speaking to Mr. Dikes.  (Delaney Dep. at 36, 40; Dikes Dep. at 33-36.)  It is not disputed, however, that Mr. Delaney reported the accident to Mr. Trujillo and that both Mr. Dikes and Mr. Schierberl talked with Mr. Trujillo about Mr. Delaney's report.  (Delaney Dep. at 35-36; Dikes Dep. at 138-39; Schierberl Dep. at 52-55.)

Plaintiff gave a different story of how her vehicle became stuck in the ditch. According to Plaintiff, she was driving her postal vehicle on Galisteo Street when she saw a red vehicle with Texas plates driving toward her in the opposite direction.  She did not think the red vehicle was going to stop, so she turned off the road to avoid colliding with it and ended up in the ditch.  Plaintiff claims that she applied her brakes and came to a stop without hitting any of the trees in the ditch, and that there were skid marks in the dirt which corroborated this claim.  According to Plaintiff, she did not hit any trees until she was

rocking her vehicle back and forth in an effort to obtain enough traction to extricate the vehicle from the ditch.  At that point, she claims that she "scraped" a sapling that was in front of her.  (Sandoval Dep. at 66-68; 79-81; Sandoval Aff. 11-7-02, ¶ 4.)  Plaintiff admits that she spoke with Mr. Dikes about the accident on August 16, 2000, and again the following day.  (Sandoval Dep. at 90-91; Dikes Dep. at 46-48.)

Based on his observations at the scene of the accident, Mr. Dikes noted that "there w[ere] no indentations in the sand from brakes being applied and sliding along.  There w[ere] just straight tire marks, with the exception of the place where it was stuck."  (Dikes Dep. at 12.)  In addition, Mr. Dikes noted that the tree struck by Plaintiff's vehicle was tilted at a 45-degree angle and that its trunk was three to four inches in diameter with visible damage extending five feet up from the ground.  Based on the extent of the damage, Mr. Dikes inferred that the tree had been struck hard and knocked over.  He reasoned that both the absence of skid marks and the level of damage to the tree were consistent with Mr. Delaney's report of a "rollaway" accident involving an unattended vehicle.  He also reasoned that this evidence was not consistent with Plaintiff's statement that she was in the vehicle and had used her brakes to stop without hitting anything.  (Dikes Dep. at 12, 77, 82; Ex. 6 to Pltf.'s Resp.)  On August 17, 2000, Mr. Dikes reported the results of his investigation to Mr. Schierberl, and he then terminated Plaintiff's employment with Mr. Schierberl's concurrence and approval.  (Dikes Dep. at 38, 46, 139-42; Ex. 1 to Dikes Dep.)

Plaintiff maintains that Mr. Dikes' investigation of the accident involving her postal vehicle was not thorough.  In particular, she claims that he did not take measurements at the

scene in the manner required by standard USPS accident-investigation procedures, did not

complete all of the proper USPS forms for such an investigation, was not diligent in seeking

out or obtaining written statements from witnesses, and failed to consider whether the alleged

rollaway was caused by equipment failure, such as a faulty transmission or parking brake.

(Ex. 1, 2 to Pltf.'s Resp.; Dikes Dep. at 6-9, 14, 24, 26-32, 39-40, 51, 53-60, 74, 98-100,

110-11.)

　　　She also claims that male employees involved in accidents with unattended postal

vehicles did not receive the same level of discipline that she received.  In this regard,

Plaintiff has submitted accident-report forms regarding three male USPS employees which

do not indicate that their employment was terminated.  The accident-report form regarding

Plaintiff also does not indicate that her employment was terminated.  Only one of the three

male employees identified by Plaintiff was a probationary employee at the time of his

accident, and that male employee elected to resign after a decision had been made to

terminate his employment.  The other two male employees identified by Plaintiff were not

probationary employees at the time of their accidents.  According to the accident-report

forms, Plaintiff's accident was the only one in which there was a discrepancy between the

employee's version of events and that of another eyewitness.  (Ex. 6 to Pltf.'s Dep.; Romero

Decl. ¶¶ 1-6.)

　　　In November 2000, several months after Plaintiff's employment with the USPS had

ended, the USPS received the results of the background investigation it had initiated when

Plaintiff's hiring documents were first processed in May of that year.  These results included

a computer printout which indicated that Plaintiff has a criminal history.  (Kesner Decl. 10-24-02, ¶ 14; Ex. E to Kesner Decl. 10-24-02; Ex. 8 to Pltf.'s Surreply.)  As noted above, the parties were granted the opportunity for additional discovery and briefing regarding the extent and significance of Plaintiff's criminal history.  [Doc. No. 79.]

The evidence of record upon completion of this additional discovery and briefing shows that on or about June 14, 1993, Plaintiff entered into a *Plea and Disposition Agreement* in Cause Number CR 92-1509 before the Second Judicial District Court of Bernalillo County, New Mexico, in which she agreed to plead guilty to two counts of the misdemeanor offense of attempt to commit an aggravated assault as charged in the *Information* in that case, and one count of the misdemeanor offense of attempt to commit false imprisonment as charged in the *Information* in that case.  The Plea and Disposition Agreement in Cause Number CR 92-1509 states that the felony charges set forth in the *Indictment* in that case would be dismissed after sentencing.  (Ex. 3 to Pltf.'s Surreply; Ex. 1 to Deft.'s Resp. to Surreply.)  The *Judgment, Sentence and Order Suspending Sentence* filed in Cause Number CR 92-1509 on May 13, 1993, shows that the Second Judicial District Court accepted Plaintiff's guilty plea to the charges contained in the *Information*, found and adjudged her guilty of those offenses, and issued a suspended sentence under which Plaintiff was required to complete three years of probation.  (Ex. 1 to Pltf.'s Surreply.)  The *Certificate of Discharge* filed in Cause Number CR 92-1509 on May 29, 1996, indicates that Plaintiff successfully completed her term of probation in that case.  (Ex. 4 to Pltf.'s Surreply.)

-8-

The evidence of record also indicates that Plaintiff has a criminal conviction in another case. On or about June 14, 1993, she entered into a *Plea and Disposition Agreement* in Cause Number 92-2645 before the Second Judicial District Court of Bernalillo County, New Mexico, in which she agreed to plead guilty to one count of the misdemeanor offense of resisting, evading, or obstructing an officer as charged in the *Information* in that case. The *Plea and Disposition Agreement* in Cause Number 92-2645 also states that the charge in the *Indictment* in that case would be dismissed. (Ex. 3, 4 to Deft.'s Resp. to Pltf.'s Surreply.) The *Judgment, Sentence and Order Suspending Sentence* filed in Cause Number CR 92-2645 on October 22, 1993, shows that the Second Judicial District Court accepted Plaintiff's guilty plea to the charge contained in the *Information*, found and adjudged her guilty of that offense, and issued a suspended sentence under which Plaintiff was required to complete 364 days of probation. (Ex. 5 to Deft.'s Resp. to Surreply; Unnumbered Ex. to Deft.'s Mem.)

Defendant contends that even if Plaintiff had not been terminated after the vehicle accident in August 2000, the subsequent discovery of her prior criminal convictions provided alternative, non-discriminatory grounds upon which Plaintiff's employment with the USPS would have been terminated in or about November 2000. In particular, Defendant contends that she would have been terminated because these criminal convictions show that she falsified or misrepresented information on her application for employment. Defendant also contends that the nature of the crimes for which Plaintiff was convicted would have resulted in the termination of her employment as well. (Kesner Dep. at 31-35, 41-42; Kesner Decl. 10-24-02, ¶¶ 1-16; Ex. B, C to Kesner Decl. 10-24-02; Ex. 2D, 2E to Pltf.'s Surreply.)

-9-

Plaintiff contends that she did not intentionally falsify her application for employment because she believed that the criminal charges against her had been dismissed. She further contends that if she had been given an opportunity to respond to the results of the USPS's background investigation, she could have explained this mistaken belief in a manner that would not have resulted in the termination of her employment. In the alternative, she asserts that under written USPS policies, her criminal convictions are not serious enough to have warranted the termination of her employment, and that other USPS employees were not terminated under similar circumstances. (Sandoval Rule 56(f) Aff. ¶¶ 6-8; Sandoval Aff. 6-24-03, ¶¶ 2-6; Ex. 2A through 2E, 9  to Pltf.'s Surreply; Kesner Dep. at 29-30, 91-92.)

On or about November 2, 2000, Plaintiff filed a claim of discrimination with the EEOC. She subsequently exhausted her administrative remedies and filed this civil action. (Compl. ¶¶ 4, 5; First Am. Answer ¶¶ 4, 5; Pretrial Order § II(A)(2), at 1.)

## II.   ANALYSIS

### A.   Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if it might affect the outcome of the case. See id. at 248. Judgment is appropriate "as a matter

-10-

of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Plaintiff may prove her claims through direct or circumstantial evidence.  See Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2154 (2003); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).   To the extent she relies on circumstantial evidence, Defendant's summary-judgment motion is to be evaluated according to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).   Under this framework, the employee must establish a prima facie case of unlawful discrimination or retaliation in order to survive a motion for summary judgment.  If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision that is alleged to be unlawful.  If the employer meets this burden, then summary judgment is warranted unless the employee can show that there is a genuine issue of material fact as to whether the reasons proferred by the employer are pretextual or whether his race, age, gender, or other illegal consideration was a motivating factor in the employment decision.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-49 (2000); Kendrick, 220 F.3d at 1226.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S.

at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995).  In addition, the Court may disregard an affidavit that contradicts the affiant's own sworn deposition testimony if the Court finds that such an affidavit constitutes an attempt to create a "sham fact issue."  Kendrick, 220 F.3d at 1223 n.2 (citing Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.     Plaintiff's Retaliation Claim**

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed . . . an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  In order to establish a prima facie case of retaliation, Plaintiff must show "(1) that . . . she engaged in protected activity; (2) that the employer took an adverse

employment action against the plaintiff; and (3) that there exists a causal connection between the protected activity and the adverse action." <u>Aquilino v. Univ. of Kansas</u>, 268 F.3d 930, 933 (10th Cir. 2001).

In this case, there is no dispute that Plaintiff engaged in protected activity by reporting allegations of sexual harassment to a supervisor in or about July 2000, and that Defendant's termination of her employment on August 17, 2000, was an adverse employment action.  As evidence of a causal connection between these two events, Plaintiff points to their temporal proximity.  She also presents evidence that Mr. Dikes was aware of at least some of her allegations of sexual harassment at the time he participated in the investigation regarding her vehicle accident and the decision to terminate her employment.  Based on this evidence, the Court concludes that Plaintiff has met her burden of establishing a prima facie case of retaliation.  <u>See</u> <u>Pastran v. K-Mart Corp.</u>, 210 F.3d 1201, 1205 (10th Cir. 2000).

As Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendant to produce evidence of legitimate, non-discriminatory reasons for its hiring decision.  <u>See</u> <u>id.</u> at 1206.  The Court concludes that Defendant has met this burden of production by presenting evidence that Plaintiff was terminated because of the accident involving her postal vehicle that occurred on August 15, 2000, while she was still a probationary employee within the first ninety days of her employment.  A jury could reasonably infer from the evidence of record that Defendant had a legitimate basis for concluding that Plaintiff was not truthful in reporting the accident because her version of events conflicts with that of Mr. Delaney and was not corroborated by other evidence.  A

jury also could reasonably infer that Defendant had a legitimate basis for concluding that this accident resulted from Plaintiff's failure to park her vehicle in a safe manner with the wheels facing the curb of the street to prevent a rollaway. <u>Cf.</u> N.M. Stat. Ann. § 66-7-353 (Michie 1978 & Supp. 1998) (stating traffic law which prohibits drivers from leaving their vehicles unattended without "effectively setting the brake, or placing the transmission in parking position . . . and, when standing upon any grade, turning the front wheels in such manner that the vehicle will be held by the curb or will leave the highway if the brake fails.")

As Defendant has met its burden of producing evidence of a legitimate, non-discriminatory reason for the decision to terminate Plaintiff's employment, it is Plaintiff's burden to show that there is a genuine issue of material fact as to whether the reasons proferred by Defendant are pretextual. <u>See</u> <u>Pastran</u>, 210 F.3d at 1206. The Court concludes that Plaintiff has not met this burden.

To establish pretext, Plaintiff must show either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proferred explanation is unworthy of credence." <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981). In order to defeat a summary-judgment motion on this issue, it is sufficient to show that the reasons proferred by the employer are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that the employer did not act for those reasons. <u>See</u> <u>Morgan v. Hilti, Inc.</u>, 108 F.3d 1319, 1323 (10th Cir. 1997). Such a showing can be made by evidence concerning the "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing

-14-

procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999). Pretext also may be shown:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Kendrick, 220 F.3d at 1230 (citations omitted).

On the other hand, the temporal proximity between an employee's protected conduct and an adverse employment action "is not sufficient by itself to raise an issue of fact" regarding pretext. Pastran, 210 F.3d at 1206. Further, "[a]n articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment." McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998). Evidence that the employer's decision was simply wrong or mistaken is not sufficient to show that the employer's reasons are pretextual because "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). "'[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual.'" Pastran, 210 F.3d at 1206 (quoting Hardy v. S.F. Phosphates L.C., 185 F.3d 1076, 1080 (10th Cir. 1999). "The test is good faith belief." McKnight, 149 F.3d at 1129.

Accordingly, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance." Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1209 (10th Cir. 1999).

For these reasons, Plaintiff cannot simply rely on her own evaluation of the cause of her vehicle accident in order to establish a genuine issue of material fact as to whether Defendant's response to the accident was pretextual.  Further, the possibility that USPS officials were mistaken in believing Mr. Delaney's version of the accident instead of Plaintiff's version is not, in itself, sufficient to show pretext.  If Mr. Schierberl and Mr. Dikes believed Mr. Delaney's version of the accident and terminated Plaintiff for that reason, "such belief would not be pretextual even if the belief was later found to be erroneous." McKnight, 149 F.3d at 1129.

In addition to setting forth her own version of what caused the vehicle to end up in the ditch, Plaintiff attempts to show pretext by pointing to the fact that Mr. Dikes knew about some of her allegations of sexual harassment at the time he investigated the accident involving her vehicle, and at the time he conferred with Mr. Schierberl about the termination of her employment.  There is no evidence, however, that Plaintiff's allegations of sexual harassment were known by Mr. Delaney, who observed the accident involving her vehicle, or by Mr. Trujillo, who reported the vehicle accident to Mr. Schierberl.  There is also no evidence that Mr. Schierberl knew of Plaintiff's allegations of sexual harassment at the time he assigned Mr. Dikes to investigate the vehicle accident, or when he approved the decision to terminate Plaintiff's employment.  Thus, there is no evidence from which a jury could

reasonably infer that Mr. Dikes fabricated the vehicle accident in response to Plaintiff's allegations of sexual harassment or that he purposefully manipulated the situation so that he would be placed in charge of investigating that vehicle accident.

In the absence of such evidence, Plaintiff contends that once assigned to investigate the accident, Mr. Dikes did not complete the investigation in a thorough or diligent manner, particularly with respect to documenting the physical evidence at the scene and obtaining written statements from witnesses.  Plaintiff also contends that Mr. Dikes did not adequately investigate whether Plaintiff's vehicle might have rolled away because of a faulty transmission or a defective parking brake.

The Court concludes that Mr. Dikes' alleged omissions in this regard do not render the results of his investigation so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that they are merely a pretext for retaliation.  Plaintiff does not dispute that vehicle accidents are serious matters which require investigation and reporting, and a comparison of the USPS accident report involving Plaintiff with the other accident reports she has tendered does not reveal that her accident was investigated more or less thoroughly than others.[1]   (Sandoval Dep. at 90; Ex. 1, 6 to Pltf.'s Resp.)

---

[1] To the extent Plaintiff argues that Defendant's reasons for terminating her employment are pretextual because other, similarly situated employees were not terminated as a result of vehicle accidents, her argument is rejected for the same reasons stated in the discussion below regarding her claim of gender discrimination in the form of disparate treatment.  See infra § II(C).

Further, Mr. Dikes' alleged failure to investigate the possibility of a faulty transmission or a defective parking brake in Plaintiff's vehicle does not show pretext because even if such an equipment failure caused the vehicle to begin rolling away from a parked position, the fact remains that Plaintiff denied (and continues to deny) that she left the vehicle unattended in a parked position or that the accident was a rollaway.  Also, Plaintiff was still under a duty to turn the vehicle's front wheels toward the curb of the street to prevent the vehicle from rolling away in the event the parking brake or transmission failed to hold the vehicle in a parked position.  See N.M. Stat. Ann. § 66-7-353.  Thus, the possibility that Plaintiff's vehicle rolled away from its parked position because of an equipment failure is not inconsistent with a good-faith belief that she was being untruthful about the accident or that she was negligent in failing to turn the wheels toward the curb when she parked.  Such a good-faith belief could still provide a legitimate, non-discriminatory reason for the termination of her employment even if an equipment failure contributed to the accident.

For these reasons, the Court concludes that the alleged flaws in Mr. Dikes' investigation do not support a reasonable inference that the decision to terminate Plaintiff's employment was pretextual.  See McKnight, 149 F.3d at 1128-29 (concluding that immaterial omissions or inconsistencies in the investigation of an employee's alleged misconduct did not give rise to a reasonable inference of pretext); Dean v. Boeing Co., 61 Fed. Appx. 576, 2003 WL 1439623, at *6 (10th Cir. 2003) (unpublished disposition reaching similar conclusion).  Considering the evidence regarding Mr. Dikes' investigation in

combination with all the other evidence of record, the Court further concludes that Plaintiff has failed to meet her burden of showing a genuine issue of material fact with regard to her retaliation claim.  Thus, Defendant is entitled to summary judgment on this claim.

C.     **Plaintiff's Claim of Gender Discrimination**
       **in the Form of Disparate Treatment**

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2002e-2(a)(1).  In this case, Plaintiff's *Complaint* alleges two forms of gender discrimination:  a hostile work environment (Count I), and disparate treatment (Count II).  Defendant has not moved for summary judgment on the claim of a hostile work environment alleged in Count I of Plaintiff's *Complaint*. Accordingly, that claim is not addressed in this *Memorandum Opinion and Order*.

Defendant has moved for summary judgment on Plaintiff's claim of gender discrimination in the form of disparate treatment, which is alleged in Count III of her *Complaint*.  The essence of Plaintiff's disparate-treatment claim is that her employment was terminated as a result of her vehicle accident while male employees who were responsible for accidents involving unattended postal vehicles were not terminated.  Thus, according to Plaintiff, Defendant treated her differently than similarly situated male employees.  (Compl. ¶¶ 34-37.)

-19-

To establish a prima facie case of gender discrimination in the form of disparate treatment, Plaintiff must show that:  (1) she belonged to the protected class; (2) she was qualified for the position; (3) despite her qualifications, she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of gender discrimination (*e.g.*, she was treated less favorably than her male counterparts).  See Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174-75 (10th Cir. 1996); Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1380 (10th Cir. 1994); Myers v. LeFlore County Bd. of Comm'rs, 134 F.3d 383, 1998 WL 43170, at *3 (10th Cir. 1998) (unpublished disposition).  As Plaintiff is not necessarily required to show that Defendant treated similarly situated employees differently in order to establish a prima-facie case of disparate treatment, see Kendrick, 220 F.3d at 1229, the Court assumes for purposes of analysis that Plaintiff has established such a prima-facie case here.

For the reasons stated in the preceding discussion of Plaintiff's retaliation claim, however, the Court concludes that Defendant has produced evidence of legitimate, non-discriminatory reasons for the decision to terminate her employment.  Thus, the dispositive issue regarding Plaintiff's disparate-treatment claim is whether there is evidence regarding the treatment of similarly situated employees to support a reasonable inference that Defendant's preferred reasons for terminating Plaintiff's employment were merely a pretext designed to cover up a gender-related motive.  See id. at 1232.

The evidence Plaintiff has presented in support of her disparate-treatment claim consists of a series of four USPS accident-report forms regarding accidents involving

unattended postal vehicles that occurred in the Santa Fe area between November 1996 and January 2002.  (Ex. 6 to Pltf.'s Resp.)  One of these reports concerns Plaintiff's accident on August 15, 2000.  The other three reports involve male employees and are summarized as follows.

On October 28, 1996, Robert Ortega's jeep moved forward and ran into a customer's garage door while he was out of the vehicle delivering a parcel.  On a portion of the accident-report form entitled "preventive action," it is stated that Mr. Ortega was reminded to use his parking brakes and given a letter of warning.

On February 23, 1999, Frank Garnica's vehicle "jumped into reverse" and struck a private, parked vehicle after he dismounted his vehicle in haste to deliver mail.  The "preventive action" section of the accident-report form states that Mr. Garnica "will be given driver's training and also instructions so that he will understand job procedure and unsafe practices in the future.  Another corrective action will be taken."

On January 3, 2002, Dale Ortiz's vehicle rolled about 35 feet and knocked down a customer's fence after Mr. Ortiz stopped the engine and dismounted the vehicle, but forgot to set his parking brake.  Under "preventive action," the accident-report form states:  "review JSA during stand up."

Each of the accident-report forms lists the number of years and months of postal service experience of the employee involved in the accident.  According to these forms, Mr. Ortega had two years and four months experience; Mr. Garnica had nine years and three

months experience; Mr. Ortiz had zero years and ten months experience; and Plaintiff had zero years and two months experience.

Defendant has submitted evidence that Mr. Ortega and Mr. Garnica were not probationary employees at the time of their accidents. With respect to Mr. Ortiz, Defendant has submitted evidence that a decision had been made to terminate his employment, but that he resigned before such action was taken. (Ex. C. to Deft.'s Reply.) Plaintiff has not presented any evidence to rebut Defendant's contentions that Mr. Ortega and Mr. Garnica were not probationary employees at the time of their accidents, or that Mr. Ortiz resigned before his employment could be terminated.[2]

The Court concludes that the evidence of record does not support a reasonable inference that Defendant's proferred reasons for terminating Plaintiff's employment were a pretext designed to cover up a gender-related motive. As a preliminary matter, the Court notes that USPS accident-report forms may not be a reliable indicator of whether or to what extent an employee was disciplined. For example, the accident report regarding Plaintiff does not indicate that her employment was terminated even though her termination date precedes the date of the report. (Ex. 6 to Pltf.'s Resp.) Thus, the omission of such information from the reports regarding other employees does not necessarily mean that they did not receive additional discipline.

_____

[2]As Plaintiff was afforded the opportunity to file a surreply or supplemental response, this evidence may be considered in ruling on Defendant's summary-judgment motion. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998).

Moreover, Plaintiff has failed to show that any of the three male employees who are the subjects of the accident reports described above are similarly situated. "An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'" Kendrick, 220 F.3d at 1232 (quoting Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)). "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." Aramburu, 112 F.3d at 1404; accord Kendrick, 220 F.3d at 1232.

Inasmuch as they were not probationary employees completing their first few months of employment with the USPS at the time of their accidents, Mr. Ortega and Mr. Garnica are not comparable with respect to work history and were not subject to the same standards governing performance and discipline. Thus, they are not similarly situated to Plaintiff.

Mr. Ortiz also is not similarly situated to Plaintiff inasmuch as he resigned rather than face termination proceedings. To the extent that Mr. Ortiz was similarly situated prior to his resignation, he was not treated differently because the USPS had decided to terminate his employment at that time. Allowing a similarly situated employee to resign in lieu of termination under these circumstances falls within the permissible range of an employer's "exercise of judgment in determining how severely it will discipline an employee." Kendrick, 220 F.3d at 1233.

The Court further notes that none of the other accidents occurred within the employee's first three months of employment, and the report regarding Plaintiff's accident is the only one that reflects a discrepancy between the driver's version of events and the version of events described by another eyewitness (which could give rise to an inference that, in addition to behaving in an unsafe manner, the driver was not telling the truth about what happened).  To the extent that Defendant had no reason to believe that the other employees were being dishonest about their accidents, the work rules they violated were not of "comparable seriousness."  Kendrick, 220 F.3d at 1232.

For all of the above reasons, the Court concludes that the evidence of record does not support a reasonable inference that Defendant's proferred reasons for terminating Plaintiff's employment were a pretext designed to cover up a gender-related motive.  Thus, Defendant is entitled to summary judgment on the claim of gender discrimination in the form of disparate treatment alleged in Count III of Plaintiff's *Complaint*.

## D.      The Defense Based on After-Acquired Evidence

The Court next considers Defendant's assertion that it is entitled to partial summary judgment on the extent of the damages or other remedies that may be available to Plaintiff in the event that Defendant is found liable on one or more of her claims.   Defendant bases this assertion on its discovery of information about Plaintiff's criminal history in or about November 2000, several months after her employment was terminated.

When an employer fires an employee for an unlawful reason but subsequently acquires new evidence that would have provided alternative, lawful grounds for firing that

employee, such after-acquired evidence generally does not provide a complete defense to liability with respect to the employee's claim that the firing was in violation of federal civil-rights laws.  See McKennon v. Nat'l Banner Publ'g Co., 513 U.S. 352, 356-57 (1995); Duart v. FMC Wyoming Corp., 72 F.3d 117, 120 (10th Cir. 1995).  After-acquired evidence of lawful grounds for terminating employment may, however, limit the damages and other remedies available to an employee under such federal laws.  See McKennon, 513 U.S. at 361-62; Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 554-55 (10th Cir. 1999).

For example, after-acquired evidence may preclude front pay or reinstatement of "someone the employer would have terminated, and will terminate, in any event and upon lawful grounds."  McKennon, 513 U.S. at 362.  "The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered," but "the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party."  Id.

In order to use this defense to limit the remedies available to an employee, an employer must do more than show that it acquired some new evidence of employee wrongdoing after the date of termination.  The employer also must "establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds if the employer had known of it at the time of the discharge."  Id. at 362-63; accord Medlock, 164 F.3d at 554.  Generally, an employer cannot establish this fact solely by means of a self-serving affidavit.  See Welch v. Liberty Machine Works, Inc., 23 F.3d

-25-

1403, 1406 (8th Cir. 1994), overruled on other grounds by McKennon, 513 U.S. at 356-57. On the other hand, an affidavit accompanied by deposition testimony or other evidence showing that the employer's policy is not merely boilerplate language on a contract or employment application, but was actually enforced in a consistent manner during the relevant time period, may entitle a defendant to summary judgment on this defense.  See, e.g., Wallace v. Dunn Constr. Co, Inc., 62 F.3d 374, 380 (11th Cir. 1995).

In this case, Defendant terminated Plaintiff's employment on or about August 17, 2000.  In or about November 2000, Defendant discovered evidence of her criminal history that was not disclosed on her application for employment.  After this civil action was filed, Defendant moved for and was granted leave to amend its *Answer* to add a defense of after-acquired evidence.  This defense is properly before the Court for the reasons given in the Court's *Order* dated June 9, 2003.  [Doc. No. 79.]

Defendant contends that both the existence of Plaintiff's prior criminal convictions and her failure to disclose them constitute lawful, alternative grounds upon which it would have terminated her employment in or about November 2000.  In this regard, Defendant primarily argues that Plaintiff's failure to disclose her prior convictions constitutes serious misconduct which would have resulted in termination in and of itself.  Defendant also presents an alternative argument that even if Plaintiff's misrepresentation was not intentional, the omission of her prior convictions resulted in a mistake of fact that voids the employment contract and provided grounds for termination as of the date the mistake was discovered because Defendant would not have entered into an employment contract with Plaintiff had

it known of her prior criminal convictions.  To support these contentions, Defendant initially submitted the affidavit of one of its Human Resources Specialists, David G. Kesner, along with the results of its background investigation and copies of the employment-application documents which contain policy statements or contractual language to the effect that furnishing false information may provide grounds for termination.  (Kesner Decl. 10-24-02 ¶¶ 15, 16; Ex. B, C, D, E to Kesner Decl. 10-24-02.)

The parties also were granted leave to conduct further discovery and supplemental briefing on this issue.  The materials submitted with the parties' supplemental briefs include copies of the plea agreements, as well as other pleadings and orders, from two prior criminal cases in which Plaintiff was convicted of misdemeanor offenses.  These materials also show that Defendant produced records indicating that the employment of several other USPS employees (including male employees) was terminated based on the discovery of false information on their applications.  Some of these terminations also involved employees with prior criminal convictions.  The evidence of record further shows that Plaintiff deposed Defendant's Human Resources Specialist, Mr. Kesner, and had ample opportunity to cross-examine him regarding the enforcement of USPS hiring policies.  (Kesner Dep. at 22-57, 62-93; Ex. 1, 3, 4, 9 to Pltf.'s Surreply; Unnumbered Ex. to Deft.'s Mem.; Ex. 1, 3, 4, 5 to Deft.'s Resp. to Surreply.)  For these reasons, this case is distinguishable from Welch, 23 F.3d at 1405-06, where the only evidence before the court regarding the employer's defense based on after-acquired evidence was the employer's own self-serving affidavit.  See Wallace, 62 F.3d at 380.

Nevertheless, Plaintiff contends that the evidence gleaned from the additional discovery in this case shows one or more disputed issues of material fact as to whether her criminal history or her failure to disclose it would be severe enough to warrant the termination of her employment.  In particular, Plaintiff claims that the prior criminal charges against her were dismissed, or that she believed that they had been dismissed based on her plea agreements regarding those charges and the advice of her counsel.  For these reasons, Plaintiff asserts that Defendant is not entitled to summary judgment on its defense of after-acquired evidence.

The evidence of record does not support Plaintiff's contentions in this regard.  Rather, the record clearly reflects that Plaintiff was convicted of the following misdemeanor offenses in 1993:  two counts of attempt to commit an aggravated assault, one count of attempt to commit false imprisonment, and one count of resisting, evading, or obstructing an officer.  She was sentenced to three years of probation in one case, and 364 days of probation in another case.  (Ex. 1, 3, 4 to Pltf.'s Surreply; Unnumbered Ex. to Deft.'s Mem.; Ex. 1, 3, 4, 5 to Deft.'s Resp. to Surreply.)  The record before this Court contains no evidence that the charges, convictions, or sentences regarding these misdemeanor offenses were ever set aside, vacated, annulled, expunged, or sealed.

Rather, the written plea agreements submitted by the parties indicate that Plaintiff initially was indicted on more serious felony charges, and in exchange for her agreement to plead guilty to the lesser offenses charged in the informations, the felony charges in the indictments were dismissed.  Each of the two written plea agreements signed by Plaintiff and

her criminal-defense attorney clearly and expressly state that she was pleading guilty to charges in an *information* and that only the charges in the *indictment* would be dismissed.

It is well established under New Mexico law that criminal charges may be brought by means of an information or an indictment, and that other charges may be dismissed in exchange for a criminal defendant's plea of guilty to a lesser charge. See N.M. Const. art. II, § 14; Rules 5-201, 5-304(A) NMRA 2003. The evidence of record does not support a reasonable inference that a competent criminal-defense attorney in 1993 would fail to recognize the difference between an information and an indictment, or would fail to explain to his or her client the consequences of pleading guilty to charges contained in an information under these circumstances.

In this regard, the Court notes that Plaintiff's signature appears on each of the plea agreements, acknowledging that she had read and understood them, and that she had discussed her case and her constitutional rights with her lawyer. Her lawyer's signature also appears on the agreements, acknowledging that he had discussed her cases with her in detail, and that he had advised her of her constitutional rights and all possible defenses. The agreements contain no language indicating that the misdemeanor charges to which Plaintiff was pleading guilty would be set aside, vacated, annulled, expunged, or sealed.

The employment application that Plaintiff completed and signed on March 7, 2000, does not distinguish between felony and misdemeanor convictions. The application form clearly and expressly states that applicants are required to disclose their prior convictions for both felonies and misdemeanors, even if the applicant did not spend any time in jail and was

not required to pay a fine.  (Ex.C to Kesner Decl. 10-24-02.)  Thus, there can be no dispute

that Plaintiff has prior criminal convictions for the misdemeanor offenses listed above and

that she was required to disclose these convictions on her application for employment with

the USPS.[3]

Further, the evidence of record does not support a reasonable inference that the USPS

policy statements or contractual language regarding the consequences of falsifying

information on an employment application were mere boilerplate that was not consistently

enforced against similarly situated employees.  In attempting to find support for such an

inference, Plaintiff cites a portion of Mr. Kesner's deposition testimony concerning one

individual who allegedly was fired for falsifying information on his employment application,

but who was rehired at a later date after he submitted another employment application in

which he honestly disclosed both his prior termination and the negative information which

---

[3]Plaintiff has submitted an affidavit dated June 24, 2003, in which she claims that her attorney advised her that the charges would be dismissed and that no criminal record would exist after she completed her probation.  In this affidavit, Plaintiff also claims that the plea agreement states that the charges would be dismissed if she agreed to take a plea.  (Sandoval Aff. 6-24-03, ¶¶ 2, 5.)  The Court does not consider these statements in Plaintiff's affidavit as evidence that any charges were dismissed or that no criminal record exists because they are inadmissible hearsay if offered to prove the truth of the matters asserted therein.  See Fed. R. Evid. 801(c), 802; Gross, 53 F.3d at 1541; Starr, 54 F.3d at 1555.  Plaintiff's statements also do not fit under the hearsay exception for statements of the declarant's then existing state of mind because this exception does not include "a statement of memory or belief to prove the fact remembered or believed" in this context.  See Fed. R. Evid. 803(3); United States v. Joe, 8 F.3d 1488, 1492-93 (10th Cir. 1993).  Plaintiff's affidavit of June 24, 2003, is not a statement of her "then existing" state of mind at the time of her guilty pleas or at the time of her employment application.  In this regard, the document dated June 24, 2003, is somewhat akin to a "sham affidavit" that contradicts her earlier plea agreements, which were required to be presented in open court under Rule 5-304(B) NMRA 2003.  Cf. Kendrick, 220 F.3d at 1223 n.2 (noting circumstances in which affidavits may be disregarded).

he had omitted from his previous application.  (Kesner Dep. at 28-30.)  This testimony does not disprove the proposition that USPS employees who falsify information on their employment applications are subject to termination.  Rather, it only shows that termination of employment under these circumstances does not necessarily preclude an employee from reapplying for another position with the USPS at a later date, provided that the employee is truthful during the reapplication process.  Plaintiff is not similarly situated to the individual mentioned by Mr. Kesner because there is no evidence that she reapplied for another position with the USPS or that she was truthful about her past when she reapplied.

During Mr. Kesner's deposition, Plaintiff's counsel also questioned him about two cases in which a decision to terminate an individual's employment based on alleged falsification of an employment application was reversed by a Merit Systems Protection Board judge or an arbitrator.  (Kesner Dep. at 90-91.)  Mr. Kesner's deposition testimony is unclear as to the reasons why the judge or the arbitrator reversed these terminations.  At best, his testimony about these cases simply confirms the presence of grievance procedures whereby an employee accused of submitting false information has an opportunity to respond to such a charge.  Plaintiff has not shown that she is similarly situated to any USPS employee who was initially terminated based on inaccurate information about her criminal history and then reinstated after the USPS obtained a correct understanding of such information.  As noted above, the evidence of record provides no grounds for disputing the fact that Plaintiff has prior criminal convictions, and the fact that these convictions are for misdemeanor offenses rather than felonies is not material under these circumstances.

Just as an employer generally cannot sustain a defense based on after-acquired evidence solely by means of a self-serving affidavit, see Welch, 23 F.3d at 1405-06, an employee generally cannot rebut such a defense solely by means of her own self-serving statements, see Wallace, 62 F.3d at 380.  Thus, in this case Plaintiff cannot defeat partial summary judgment on the defense of after-acquired evidence solely by means of the affidavit stating her current belief or recollection that the criminal charges against her were dismissed. Absent some reasonable basis in the record to support such a belief, a jury could not reasonably infer that Defendant would have been required to accept Plaintiff's self-serving statements in determining whether she falsified her application.

In this regard, the Court notes that Mr. Kesner was questioned at his deposition about another individual whose employment was terminated despite his claim that he "forgot" about a prior conviction for a misdemeanor drug offense when he applied for a position with the USPS.  Mr. Kesner responded that it was fair to assume the USPS "chose to disbelieve his explanation that he had forgotten it."  (Kesner Dep. at 84.) As Plaintiff has not come forward with any evidence of a reasonable basis for her belief that she has no criminal record, there is no reason why Defendant could not have disbelieved Plaintiff's explanation as it did in the prior case discussed at Mr. Kesner's deposition.  For these reasons, Defendant is entitled to partial summary judgment on its defense that Plaintiff's employment would have been terminated based on the false information about her criminal history that she supplied on her application for employment.

In the alternative, Defendant also is entitled to partial summary judgment on its defense that Plaintiff's employment would have been terminated based on her prior criminal convictions. While the excerpts from the USPS handbook attached to Plaintiff's *Surreply* indicate that the policy of the USPS is to review criminal convictions in a case-specific manner, Plaintiff has presented no compelling reasons why the factors listed in the USPS handbook would have precluded Defendant from terminating her employment in this case. The misdemeanor offenses for which Plaintiff was convicted involved elements of violent or threatening behavior and disobedience to a law enforcement officer which are relevant to her employment under the factors set forth in the USPS handbook and Mr. Kesner's deposition testimony. (Ex. 2A, 2B, 2C, 2D, 2E to Pltf.'s Surreply; Kesner Dep. at 30-31.)

While there is no genuine issue of material fact which would defeat Defendant's contention that the after-acquired evidence of Plaintiff's misconduct was severe enough to warrant termination, there does remain a genuine issue of material fact as to the exact date on which Plaintiff's employment would have been terminated based upon this after-acquired evidence. This date is of potential importance to the calculation of the back pay to which Plaintiff might be entitled if she were to prevail on one or more of her claims. See McKennon, 513 U.S. at 362.

In this regard, the evidence of record shows that standard USPS procedures probably would not have permitted Defendant to terminate Plaintiff's employment immediately upon receipt of the results of her background investigation in or about November 2000. Rather, these procedures probably would have required Defendant to provide her with a pre-

termination opportunity to comment on any evidence that may have rendered her unsuitable for employment with the USPS. Mr. Kesner's deposition testimony further suggests that an employee may be given up to fourteen days to comment on such information. (Ex. 2C to Pltf.'s Surreply, at 122; Kesner Dep. at 23.) This evidence calls into question Defendant's contention that Plaintiff would have been fired immediately upon receipt of the results of her background investigation in or about November 2000. Because there is a disputed issue of material fact on this issue, the Court cannot grant partial summary judgment as to the precise date on which Plaintiff would have been fired based on her criminal convictions or the evidence that she presented false information on her application form.

Nevertheless, even assuming that Plaintiff would have been given an opportunity to comment on the information about her criminal history, and that such an opportunity would have resulted in the discovery of all the evidence regarding her criminal records that is currently before this Court, there is still no reasonable basis for disputing the fact that Plaintiff's misconduct was of such severity that she eventually would have been terminated on the basis of that misconduct alone. Accordingly, Defendant is entitled to partial summary judgment on its defense of after-acquired evidence, except that the exact date on which Plaintiff would have been terminated based on such after-acquired evidence remains to be determined.

## III.  **CONCLUSION**

For the foregoing reasons, the Court concludes that Defendant is entitled to partial summary judgment on Plaintiff's retaliation claim as well as her claim of gender

-34-

discrimination in the form of disparate treatment.  Defendant also is entitled to partial summary judgment on the claim that Plaintiff eventually would have been terminated based on after-acquired evidence of her criminal history, but there remains a genuine issue of material fact as to the exact date on which Plaintiff would have been terminated based on this after-acquired evidence.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Partial Summary Judgment* [Doc. No. 42] is **GRANTED IN PART** with respect to the retaliation claim alleged in Count II of Plaintiff's *Complaint*.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Partial Summary Judgment* [Doc. No. 42] is **GRANTED IN PART** with respect the claim of gender discrimination in the form of disparate treatment alleged in Count III of Plaintiff's *Complaint*.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Partial Summary Judgment* [Doc. No. 42] is **GRANTED IN PART** and **DENIED IN PART** with respect to the defense of after-acquired evidence under the conditions specified above.

**SO ORDERED**, this 31st day of August, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

-35-